26 A.3d 474

UNITED STATES ORGANIZATIONS FOR BANKRUPTCY
ALTERNATIVES, INC., Appellee

v.

DEPARTMENT OF BANKING and Glenn E. Moyer, in
his Capacity as the Secretary of the Department of
Banking, Appellant.

United States Organizations for Bankruptcy
Alternatives, Inc., Cross–Appellant

v.

Department of Banking and Glenn E. Moyer, in his
Capacity as the Secretary of the Department of
Banking, Cross–Appellee.

Supreme Court of Pennsylvania.

Argued and Submitted May 11, 2011.

Decided Aug. 15, 2011.

Susan J. Forney, Howard Greeley Hopkirk, Kenneth Lawson Joel, John G. Knorr III, Calvin Royer Koons, William H. Ryan Jr., Harrisburg, PA Office of the Attorney General, for PA Department of Banking & Steven Kaplan.

Timothy James Nieman, Robert J. Tribeck, Rhoads & Sinon, L.L.P., Harrisburg, for United States Organizations for Bankruptcy Alternatives, Inc., United States Organizations for Bankruptcy Alternatives, Inc.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Chief Justice CASTILLE.

We decide the cross-appeals of the Commonwealth Department of Banking and Glenn E. Moyer, in his capacity as the Department's Secretary, (together, the "Department"), and of the United States Organizations for Bankruptcy Alternatives, Inc. ("USOBA"), a trade association. In these direct appeals, the parties challenge different aspects of the Commonwealth Court's decision that the Debt Management Services Act ("Act 117") is unconstitutional in part.[1] At this Court's request, the parties also addressed the issue of whether the lower court's disposition is a final order, appealable pursuant to Rule of

---

1. Act No. 117 of Oct. 9, 2008, P.L. 1421, *eff.* Feb. 6, 2009, 63 P.S. §§ 2401–2421, 2448–2449.

Appellate Procedure 341. *See* Pa.R.A.P. 341. For the reasons that follow, we conclude that the Commonwealth Court's order is not appealable and, accordingly, we quash the cross-appeals.

### Background

The General Assembly adopted Act 117 in October 2008 to regulate, in relevant part, providers of debt settlement services ("DSS"). A DSS provider negotiates with creditors on behalf of a consumer "for the purpose of the creditor forgiving part or all of the principal of the debt incurred or credit extended to that consumer." 63 P.S. § 2402. Pursuant to Section 3(b) of Act 117, DSS providers are prohibited from operating in Pennsylvania without a license from the Banking Department, and are required to comply with the Department's regulations. 63 P.S. § 2403(b). Licensed DSS providers may not charge a consumer "any fees other than those described in [Section 15 of Act 117] or by regulation promulgated by the [D]epartment." 63 P.S. § 2415(h). The Department has not yet adopted any fee regulations. Other sections of Act 117 list licensing fees, describe the initial licensing, license renewal, revocation, and reinstatement processes, and create penalties for violations of the statute. *See generally* 63 P.S. §§ 2401–2421, 2448–2449.

In February 2009, USOBA, whose membership includes DSS providers, filed a Petition for Review in the Commonwealth Court challenging the constitutionality of those parts of Act 117 applicable to DSS providers.[2] USOBA claimed that Act 117 violates the non-delegation, equal protection, and due process provisions of the Pennsylvania and U.S. Constitutions, and requested a declaratory judgment, injunctive relief, and compensation for attorneys' fees and costs. The Department denied the allegations, and filed an Application for Summary Relief, claiming that the contentions in the complaint were insufficient as a matter of law to state a claim. Following a

**2.** On March 6, 2009, the Commonwealth Court entered an order on the parties' stipulation that the Department was preliminarily enjoined from enforcing Act 117, as it relates to performance of debt settlement services, pending final resolution of this matter.

hearing, the Commonwealth Court denied the Department's application in an unpublished opinion.

Subsequently, in September 2009, USOBA filed its own Application for Summary Relief seeking a declaration that all provisions of Act 117 relating to DSS providers violate the Non–Delegation Clause of the Pennsylvania Constitution and are unenforceable. USOBA noted that its due process and equal protection claims did not have to be decided at that juncture.

On February 25, 2010, the Commonwealth Court granted USOBA's declaratory judgment application in part and denied it in part, without a hearing. According to the court, the following parts of Act 117 violate the Non–Delegation Clause and, therefore, are unconstitutional and unenforceable: (1) that portion of Section 3(b) which permits the Department to promulgate regulations affecting DSS providers, and (2) Section 15(h), in its entirety, which authorizes the Department to regulate fees that a DSS provider may charge consumers. The Court stated that there was no basis at that time on which to grant USOBA summary relief on claims regarding that part of Section 3(b) which addresses the Department's power to license DSS providers or regarding any other challenged provision of Act 117. The court rejected USOBA's argument that the unconstitutional provisions were inseverable and that, as a result, Act 117 was unenforceable in its entirety.

The Department filed a notice of appeal from the Commonwealth Court's decision on March 19, 2010. USOBA filed its notice of cross-appeal on April 5, 2010. Subsequently, the parties submitted jurisdictional statements regarding their respective appeals, pursuant to Rule of Appellate Procedure 909. See Pa.R.A.P. 909(a)-(b). Upon review of the parties' filings, as to each appeal, we postponed consideration of jurisdiction to the merits stage and ordered the parties to brief the following supplemental issue before addressing their substantive claims:

Whether the Commonwealth Court's Order is a final, appealable order under Pa.R.A.P. 341 for purposes of this

appeal; the parties. are to include a discussion of *Pennsylvania Bankers Ass'n v. Department of Banking* [597 Pa. 1], 948 A.2d 790 (Pa.2008) on this issue.

*See* Pa.R.A.P. 909(c). The parties then filed their respective briefs.

### *Jurisdiction over the Department's Appeal*

The Department argues that the Commonwealth Court's order is appealable because it is a final declaration of the parties' rights with respect to the constitutionality of Sections 3(b) and 15(h) of Act 117. The Department acknowledges that, because the decision below "does not resolve all the issues in the case," it would generally be considered an interlocutory order, but claims that in a declaratory judgment action appealability is determined on different grounds. According to the Department, the pivotal question in determining the appealability of an order in a declaratory judgment action is whether the decision constitutes the final determination of the parties' rights, status, or legal relations. The Department asserts that the Commonwealth Court's order is a final determination because it "permanently and unalterably changes the status and the rights of the Department to implement [Sections 3(b) and 15(h) of Act 117]" and cannot be reversed through further proceedings in the lower court. The Declaratory Judgment Act ("DJA"), the Department concludes, was devised to ensure the continued operation of government by permitting the Commonwealth to challenge the validity of a decision, like the one now before the Court, without waiting for the remainder of the case to be fully litigated. Department's Brief, at 19–21 (citing *Nationwide Mutual Ins. Co. v. Wickett*, 563 Pa. 595, 763 A.2d 813 (2000)).

USOBA responds that the appeal is interlocutory and criticizes the Department's application of *Wickett*. This action was filed, USOBA emphasizes, to strike all of Act 117's provisions pertaining to DSS providers. The lower court granted only partial relief, and additional claims remain pending below, which could afford USOBA full relief. Until the Commonwealth Court decides those claims, the appeal is

interlocutory, regardless of whether this is a declaratory judgment action. According to USOBA, the General Assembly did not intend to alter the general rules of appealability in drafting the DJA. USOBA's Brief at 9–10 (quoting *Wickett,* 763 A.2d at 819 (Saylor, J., dissenting)). Appealability rules, USOBA states, are designed "to avoid piecemeal litigation and inconsistent results." USOBA distinguishes the opinion of the *Wickett* majority, stating that *Wickett* governs cases in which parties rather than claims are dismissed. *Id.* at 9–11 (citing *Pennsylvania Bankers Ass'n v. Dep't of Banking,* 597 Pa. 1, 948 A.2d 790 (2008) (*"Pennsylvania Bankers"*)). Finally, USOBA challenges the argument that the Department is harmed by delay in the review of this appeal on the ground that the Department has failed to move forward in the lower court on the remaining issues, for example, by requesting discovery.

In its reply brief, the Department asserts that the Commonwealth Court's order here is distinguishable from the decision in *Pennsylvania Bankers,* which "neither granted nor denied the relief sought by petitioners in that case." According to the Department, in a declaratory judgment action, the pendency of USOBA's remaining claims does not affect the appealability of the order entered by the lower court with respect to Sections 3(b) and 15(h) of Act 117.

Rule 341 provides that an appeal may be taken as of right from any final order of a lower court. Pa.R.A.P. 341(a). In relevant part, a final order is any order that "(1) disposes of all claims and of all parties; or (2) is expressly defined as a final order by statute; or (3) is entered as a final order pursuant to subdivision (c) of this rule." Pa.R.A.P. 341(b). Subdivision (c) states that a trial court may enter a final order as to fewer than all the claims for relief presented or parties involved, upon the express determination of the trial court that an immediate appeal would facilitate resolution of the entire case. "In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order." Pa.R.A.P. 341(c). The Department

relies on this Court's decision in *Wickett* to argue that the decision below is a final order and appealable as of right under Rule 341.

In *Wickett*, this Court held that a trial court has jurisdiction for only thirty days to reconsider an order sustaining preliminary objections to a declaratory judgment action. 763 A.2d at 818 (citing 42 Pa.C.S. § 5505). The trial court sustained objections in the nature of a demurrer, and dismissed three of the several defendants from the action. More than a year later, the trial court vacated its original order based on a development in the caselaw, and reinstated the cause of action against the dismissed defendants, including appellant. On appeal to this Court, the appellant argued that the trial court's initial order was final and could only have been modified or appealed within thirty days after its entry. According to the appellant, the trial court's order declared the rights, status, and other legal relations of the parties, and was therefore defined by the DJA as a final order, appealable pursuant to Rule 341(b)(2). *Id.* at 817 (citing 42 Pa.C.S. § 7532, Pa.R.A.P. 341(a), (b)(2)).[3] The appellees responded that the trial court's order sustaining preliminary objections was interlocutory because it did not dispose of all claims and all parties. But, we agreed with the appellant and reversed. We concluded that the DJA defined the trial court's order as final, appeal was proper pursuant Rule 341(b)(2), and the trial court improperly modified the order after the thirty day appeal period lapsed.

Recently, we revisited the *Wickett* decision and rejected its applicability under circumstances similar to those before us. Thus, in *Pennsylvania Bankers*, we held that an order in a declaratory judgment action, which merely dismisses one or some of several alternative theories for relief without ultimately deciding the case, is not appealable under Rule 341. 948 A.2d at 798. The appellant banks and banking associations ("the banks") had sought review of a Commonwealth Court

---

**3.** The DJA states that courts "have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. . . . The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree." 42 Pa.C.S. § 7532.

decision sustaining in part the preliminary objections of the appellee Commonwealth parties and dismissing two of the banks' several claims that the provision which exempts credit unions from most taxation was unconstitutional. *See id.* at 791–92 (citing 17 Pa.C.S. § 517). The remaining claims, to which objections were overruled, had the potential to afford the banks the full relief originally requested. On direct appeal to this Court, the banks argued that the lower court's order was appealable because it declared conclusively that the banks' dismissed claims were invalid, and our decision in *Wickett* deemed such DJA orders final. The Commonwealth parties responded that the appeal was interlocutory because the Commonwealth Court's order did not end litigation against any party, and distinguished *Wickett* on that basis.

We agreed with the Commonwealth parties and quashed the appeal. The Court distinguished *Wickett*, stating that the Commonwealth Court below had simply narrowed the scope of the declaratory judgment action, dismissing only claims, not parties from the action. *Pennsylvania Bankers*, 948 A.2d at 799. We explained that the banks could potentially obtain the relief they sought in the lower court, by pursuing their alternate claims, and that the order dismissing some of their theories for relief "had no practical effect upon the ultimate decision in th[e] case." *Id.* at 798.[4]

4. In framing its argument in this case, USOBA also relies on the responsive opinion of Mr. Justice Saylor in *Wickett*. Justice Saylor dissented in *Wickett* on the ground that the statutory scheme of the DJA did not support the majority's conclusion that the finality language of Section 7532 was intended by the General Assembly to modify the usual rules of appealability. 763 A.2d at 819 (Saylor, J., dissenting). In a *Pennsylvania Bankers* concurrence, Justice Saylor renewed his criticism of *Wickett*, stating that "it would be preferable: to concede that this Court has had great difficulty with *Wickett* in the years since its issuance; to recognize that *Wickett's* rationale is irreconcilable with a scheme of appealability implementing considered limits designed to control piecemeal litigation; and therefore, to limit *Wickett* to its facts." *Pennsylvania Bankers*, 948 A.2d at 801 (Saylor, J., concurring). Although the *Pennsylvania Bankers* majority did not go so far as the concurrence to limit the *Wickett* decision to its facts, the majority certainly limited *Wickett* in the context which is directly relevant here. Notably, the parties here do not request that we either further limit or overrule the decision in *Wickett*.

In the lower court, USOBA requested relief in the form of a declaration that Act 117 in its entirety, as applied to DSS providers, is unconstitutional. But, when USOBA requested a summary adjudication, the Commonwealth Court granted relief in part, striking only two provisions of Act 117. The lower court did not address several of USOBA's arguments and did not ultimately decide whether USOBA was entitled to the full relief originally requested, which remains available via USOBA's alternate arguments. Essentially, the lower court simply narrowed the scope of USOBA's declaratory judgment action, without ultimately deciding the case. Under the rule announced in *Pennsylvania Bankers*, ·the Commonwealth Court's order is interlocutory and not appealable. The Department appealed an order which, in light of USOBA's original challenge to Act 117, granted USOBA only a partial declaration of the parties' rights, status, or legal relations.

The Department emphasizes a different aspect distinguishing the present case from *Pennsylvania Bankers*, and argues that it is dispositive of the appealability question. According to the Department, the lower court here "permanently and unalterably" declared Sections 3(b) and 15(h) unconstitutional, while in *Pennsylvania Bankers*, the court "neither granted nor denied" the constitutional claim regarding the tax exemption provision at issue. But, the Department fails to account for the actual basis of our prior decision or to identify any tension in applying *Pennsylvania Bankers* here. The prevailing considerations in *Pennsylvania Bankers* were the effect of the lower court's decision on the scope of the litigation and the practical effect on the ultimate decision in the case. Appellees in *Pennsylvania Bankers* also urged this Court to permit an appeal because a particular theory of relief was rejected conclusively. We rejected that approach in *Pennsylvania Bankers* and, similarly, decline to adopt it here.

We note that the distinction between *Pennsylvania Bankers* and the present case identified by the Department derives not from the application of *Wickett* in the post-*Pennsylvania Bankers* legal regime, but from the nature of the original challenge, *i.e.*, a challenge to a single provision versus multiple

provisions. In other words, in *Pennsylvania Bankers*, the banks challenged the constitutionality of a single provision and, if the lower court had decided the constitutional issue and "granted or denied" relief, the order would have decided rather than merely narrowed the dispute between the parties. Here, however, the constitutionality of multiple provisions remains in dispute and, even though the Commonwealth Court granted USOBA relief as to two provisions, the dispute has not been resolved but merely narrowed. Therefore, the *Pennsylvania Bankers* decision is relevant and dispositive.

■ We also reject the Department's suggestion that it is entitled to preferential treatment because of its status as a governmental entity. Rule 341 draws no distinction to separate appealable from non-appealable orders on the basis of party type, whether the party is challenging or defending a statute, or nature of the party, *i.e.*, Commonwealth party versus private individual; rather, the nature of the lower court's order as final or interlocutory is the pivotal factor. *Compare* Pa.R.A.P. 341 *with, e.g.*, Pa.R.A.P. 1734, 1736 (Commonwealth parties are subject to different security requirements to obtain stay pending appeal, than other parties in civil litigation). Furthermore, the Department provides no support for the assertion (nor can we find any evidence of legislative intent) that the General Assembly created an exception to the general rules of appealability for Commonwealth parties seeking to overturn a lower court decision striking a statute as unconstitutional. For these reasons, we will not devise an *ad hoc* procedure to vindicate the interest advocated by the Department. The Department has failed to persuade us that a straightforward application of our decision in *Pennsylvania Bankers* is inappropriate here. Pursuant to precedent, the Department's present appeal is quashed.[5]

### *Jurisdiction over USOBA's Appeal*

In June 2010, the Court requested additional argument on the separate matters of the Court's jurisdiction over the

5. Consequently, we express no view regarding the merits of the Department's appeal.

Department's and USOBA's cross-appeals. Nonetheless, in their supplemental briefs, both parties failed to address the jurisdictional predicate for USOBA's cross-appeal.

The sole argument in support of jurisdiction over the cross-appeal appears in USOBA's jurisdictional statement. USOBA states only that it "filed its cross-appeal in case this Court determines that it does have jurisdiction to hear the [Department's] appeal." USOBA's Jurisdictional Statement, at 1. USOBA's position on that predicate point is that, in fact, there is no jurisdiction over the Department's appeal. In response to USOBA's initial filing, the Department rejected USOBA's jurisdictional predicate as insufficient, and sought to distinguish the procedural posture of the cross-appeal from that of its own appeal. Asserting an argument akin to a claim that USOBA is not aggrieved by the lower court decision, the Department claimed that the Commonwealth Court's order was final for the purposes of Sections 3(b) and 15(h) and its own appeal, but interlocutory regarding the remainder of Act 117 and USOBA's cross-appeal.

Although we reject the Department's party-centered argument respecting appealability under Rule 341, we nonetheless necessarily conclude that USOBA's contingent cross-appeal is interlocutory. We reiterate that the Commonwealth Court's order granted only part of the relief requested and merely narrowed the dispute between the parties. The only argument raised by USOBA in support of finding that jurisdiction over the cross-appeal exists is not persuasive in light of the reasoning supporting our disposition of the Department's appeal. Accordingly, USOBA's cross-appeal is also quashed.

Both appeals quashed. Jurisdiction relinquished.

Justices EAKIN, BAER, TODD, McCAFFERY and ORIE MELVIN join the opinion.

Justice SAYLOR concurs in the result.